(May 11, 1912.)

## ELI PETAJANIEMI and Wife, Respondents, v. WASHINGTON WATER POWER CO., Appellant.

[124 Pac. 783.]

JUDICIAL NOTICE—LAWS OF NATURE—CONFLICTING EVIDENCE—INSTRUCTIONS—CONDUCT OF COUNSEL.

(Syllabus by the court.)

1. Under the provisions of sec. 5950, Rev. Codes, the courts of this state take judicial notice of the laws of nature, and in such cases resort for their aid and information to appropriate books and documents of reference.

2. Where certain expert witnesses testify that a dam is a given elevation above sea level, and that it did not and could not hold back flood waters and cause the overflow of lands above that elevation, and other witnesses who saw the lands at the time of high or flood water season testified that it actually was flooded and submerged to a higher elevation than that testified to by the expert witnesses, there is such a substantial conflict in the evidence as to go to the jury, and the conflict is a proper matter to be settled by the jury as a disputed fact in the case.

3. Evidence considered with reference to the damage done to certain lands by reason of the severance of a portion thereof caused by permanent flooding, examined and *held* sufficient to support the verdict and judgment.

4. Certain arguments and statements made by counsel to the jury outside of the facts in the case, tending to prejudice and inflame the jury against the adverse party, considered and commented upon.

'APPEAL from the District Court of the First Judicial District for Shoshone County. Hon. W. W. Woods, Judge.

'Action of plaintiffs for damages caused by flooding and submerging their lands. Judgment for plaintiffs and defendant appealed. *Affirmed.*

John P. Gray, Frank T. Post, and Charles L. Heitman, for 'Appellant.

The laws of nature cannot be turned aside by the story of any witness or number of them. Water will flow down hill and seek its level; and in this case no matter how many witnesses might have said that lands above an elevation of 2,128 feet were affected by reason of the operation of the dams, the physical facts and natural laws convict them of being mistaken. From the earliest times, the verdicts of juries have been set aside by the courts where their findings are opposed to physical facts, and when it became apparent to the trial court that the contention of the respondents was contrary to natural law and was a physical impossibility, it became his duty to instruct the jury that the respondents were not entitled to compensation for any alleged damage to lands above an elevation of 2,128 feet. (*In re Harriott's Estate,* 145 N. Y, 540, 40 N. E. 246; *Hunter v. New York O. & W.'R. Co.,* 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; Elliott on Evidence, sec. 39; *Rome Ry. & Light Co. v. Keel,* 3 Ga. App. 769, 60 S. E. 468; *Zimmerman v. Bannon,* 101 Wis. 407, 77 N. W. 735; *Peterson v. Standard Oil Co.,* 55 Or. 511, Ann. Cas. 1912A, 625, 106 Pac. 337; *Viemeister v. White,* 179 N. Y. 235, 103 Am. St. 859, 1 Ann. Cas. 334, 72 N. E. 97, 70 L. R. A. 796; *Brown v. Piper,* 91 U. S. 37, 23 L. ed. 200; *Bier v. Hosford,* 35 Wash. 544, 77 Pac. 867; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 181; *Hudson v. Rome, W. & O. R. Co.,* 145 N. Y. 408, 40 N. E. 9; *Finkelston v. Chicago M. & St. P. Ry. Co.,* 94 Wis. 270, 68 N. W. 1005; *Badger v. Janesville Cotton Mills,* 95 Wis. 599, 70 N. W. 687; *O'Brien v. Chicago, St. P. M. & O. Ry. Co.,* 102 Wis. 628, 78 N. W. 1084; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; *Cawley v. LaCrosse,* 101 Wis. 145, 77 N.

W. 179; *Dingley v. Star Knitting Co.*, 134 N. Y. 552, 32 N. E. 35; *Falkenstern v. Town of Greenfield*, 145 Wis. 232, 130 N. W. 61; Elliott on Railroads, 2d ed., sec. 1703.)

It is the duty of the trial court to direct a verdict at the close of the evidence in two classes of cases: 1. That class in which the evidence is undisputed; and 2. That class in which the evidence is conflicting, but is of so conclusive a character that the court in the exercise of sound judicial discretion would set aside a verdict in opposition to it. (*Woodward v. Chicago, M. & St. P. Ry. Co.*, 145 Fed. 577, 578, 75 C. C. A. 591.)

Counsel for the plaintiffs throughout the entire trial and in his argument to the jury indulged in repeated, continued, and studied efforts to inflame and prejudice the jury against the defendant. They were led to disregard scientific facts, and to make a finding in direct conflict with the certain result of the application of the laws of nature. (*Lindsay v. Pettigrew*, 3 S. D. 199, 52 N. W. 873; *Winter v. Sass*, 19 Kan. 556; *Scripps v. Riley*, 38 Mich. 10; *Chicago City Ry. Co. v. Gregory*, 221 Ill. 591, 6 Ann. Cas. 220, 77 N. E. 1112; *Dillingham v. Scales*, 78 Tex. 205, 14 S. W. 566; *Bullard v. Boston & M. R. R. Co.*, 64 N. H. 27, 10 Am. St. 367, 5 Atl. 838; *Jordan v. Wallace*, 67 N. H. 175, 32 Atl. 174; *Huckell v. McCoy*, 38 Kan. 53, 15 Pac. 870.)

If there is the slightest doubt that such conduct and remarks of counsel had any influence whatsoever upon the jury in arriving at their verdict, then that doubt under the adjudicated cases is resolved in favor of the appellant, and if the court cannot say whether or no such conduct had any influence upon the jury, then a new trial should be granted. (*Bremmer v. Railroad Co.*, 61 Wis. 114, 20 N. W. 687; *Bullard v. Boston etc. R. R. Co.*, 64 N. H. 27, 10 Am. St. 367, 5 Atl. 838; *Cleveland Paper Co v. Banks*, 15 Neb. 20, 48 Am. Rep. 334, 16 N. W. 833; *Henry v. Railroad Co.*, 70 Iowa, 233, 30 N. W. 630; *Campbell v. Maher*, 105 Ind. 383, 4 N. E. 911; *Bedford v. Penny*, 58 Mich. 424, 25 N. W. 381; *Union etc. Ins. Co. v. Cheever*, 36 Ohio St. 201, 38 Am. Rep. 573.)

A. G. Kerns, for Respondents.

Where a part of a tract is taken by condemnation, damages to the remaining land shall be given. (2 Lewis, Em. Dom. 462; *Sharp v. United States,* 191 U. S. 341, 24 Sup. Ct. 114, 48 L. ed. 211; *Grand Rapids L. & D. Co. v. Chesebro,* 74 Mich. 466, 42 N. W. 66; *Backus, Jr., & Sons v. Fort St. U. D. Co.,* 169 U. S. 557, 18 Sup. Ct. 445, 42 L. ed. 853.)

The compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may reasonably be expected in the immediate future. (*Boom Co. v. Patterson,* 98 U. S. 403, 408, 25 L. ed. 206.)

The rules as to the measure of damages was announced by this court in *Young v. Extension Ditch Co.,* 13 Ida. 174, 89 Pac. 296. (See, also, *Boise Valley Construction Co. v. Kroeger,* 17 Ida. 384, 402, 105 Pac. 1070, 28 L. R. A., N. S., 968.)

AILSHIE, J.—Petajaniemi and his wife commenced an action against the appellant to recover damages for the flooding and permanent overflow of their lands, and about the same time a like action was commenced by Maak and wife and Hilda Ludden to recover for flooding and permanent overflow of their lands. The causes were transferred to Shoshone county and there, upon order of the judge, the two cases were consolidated and tried at the same time, and the jury returned a verdict in favor of Petajaniemi for $3,124.90 and for Maak in the sum of $3,976.67. A motion was made for a new trial and denied by the court, and this appeal has been prosecuted from both judgments. The same objections are made and the same points are presented in both appeals, and so what we say with reference to one will apply to both.

This case grows out of the following conditions and circumstances: Many years ago the government, by treaty with the Coeur d'Alene Indians, provided for the opening of a portion of the Coeur d'Alene Indian Reservation. At the time of making this treaty, a man named Post was located

at what is now known as Post Falls, on the Spokane river. At the time of entering into this treaty, the Indians reserved from the lands ceded to the government a tract of land occupied by Post, including the falls in the river and the water power therein, and thereupon the Indian chief, Andrew Seltics, executed and delivered to Post a document in the form of a deed or grant recognizing the rights of Post to the lands and water -power, and thereafter Congress ratified the action of the Indians and issued a patent to Post for this land. Dams were maintained in the river at this place for many years. The appellant finally acquired this property, and after it became the owner of the property and water power, and about the year 1906, it began to improve and enlarge the dam. The Spokane river is the outlet to Lake Coeur d'Alene, and the lands occupied by the respondents herein are situated on the Coeur d'Alene river, which flows into the Coeur d'Alene lake. These lands are some 55 or 60 miles distant from Post Falls and are located along the banks of the Coeur d'Alene river. Prior to the improvement and reconstruction of the dams at Post Falls the low water elevation in Coeur d'Alene lake was 2,120 feet above mean sea level. The appellant so improved and constructed the dams as to enable it to raise what are called "bear-traps" at the top of the dam, whereby the water could be raised and held at an elevation of 2,126.5 feet above sea level. The chief purpose of these devices is to convert the Coeur d'Alene lake into a storage reservoir and hold the water during the low-water season at a higher elevation than the ordinary and natural condition of the lake, the Spokane river and the dam in the falls would previously permit, and thereby give a greater power capacity at Post Falls than could otherwise be obtained during the low-water season. This increased height in the dam naturally resulted in submerging the lands adjacent to Coeur d'Alene lake and the streams flowing into the lake to an elevation of at least 2,126.5 feet. The result was that the Coeur d'Alene river was raised above its banks for some distance up the stream, and the waters were spread out over the valley submerging a great portion of the low-

lands along the stream. The water is held back by reason of these dams being raised until so late in the summer that crops cannot be grown on the lands submerged, and such lands are for all practical purposes completely taken and appropriated by the company and the remaining lands are necessarily damaged to a large extent by reason of the water being raised above the banks of the river and spread out so as to make sloughs and inlets in the lowlands. The jury was allowed to inspect the lands, and in addition to bringing in a general verdict they answered special interrogatories submitted to them by the court, as follows:

"What do you find the value of the lands of the plaintiffs below an elevation of 2,128 feet of mean sea level to be?

"11.2 acres at thirty dollars ($30) per acre.

"2. What do you find the damage to the remainder of the lands of the plaintiffs by reason of the severance of the portion below 2,128 to be?

"Two thousand one hundred and sixty-four dollars.

"3. Do you find that the defendant held water upon the lands of the plaintiffs at an elevation above 2,128 feet?

"Yes, in flood season."

It appears from the answers to the interrogatories that the jury found that 11.2 acres of land was totally submerged; in other words, there were 11.2 acres below the elevation of 2,128 feet which was fixed by the engineers as the maximum elevation of water held by reason of the dam above sea level. The jury found that the damage to the remainder of plaintiffs' lands would be $2,164, and they also found that *in the flood season* the water was held above 2,128 feet. The case was tried by all parties on the theory that all the land permanently submerged below the elevation of 2,128 feet above mean sea level was for all practical purposes permanently taken, and that respondents should recover on that theory and principle of law. (*Boise Valley Const. Co. v. Kroeger,* 17 Ida. 384, 105 Pac. 1070, 28 L. R. A., N. S., 968.)

Counsel for appellant insist that the evidence does not support the verdict for $2,164, and that it was an impossibility for the land to be flooded by reason of this dam to an

elevation above 2,128 feet. They argue that since the dam is at the highest point only 2,126.5 feet elevation above sea level, it was impossible for the dam to cause the water to rise any higher than that elevation at any other point either on the Coeur d'Alene lake or the rivers tributary to the lake. It is therefore contended that evidence of witnesses which tend to show that the land was flooded to an elevation above 2.128 feet as indicated by the answer of the jury to the third interrogatory is impossible and should not be believed, for the reason that it is contrary to the law of nature which causes water to seek its level. Now, it is true that a court is not expected to believe the testimony of a witness when it is in direct conflict with a well-recognized law of nature. The statute of this state (sec. 5950) provides that "courts take judicial notice of the following facts: . . . . No. 8. The laws of nature. . . . . In all these cases the court may resort for its aid to appropriate books or documents of reference." The courts will take judicial notice of the fact that water seeks its level; and if a witness should testify that it stood up in hillocks or piles like stone or earth, a court would not be expected to believe it. Or, if a witness should testify that a body when turned loose did not fall to the ground, but that it rather fell out into space, a court would not be expected to believe it, and such evidence would not be entitled to any weight or create a conflict of evidence. (*Hunter v. New York, O. & W. R. Co.,* 116 N. Y. 615, 23 N. E. 9, 6 L. R. A. 246; Elliott on Evidence, sec. 39; *Zimmerman v. Bannon,* 101 Wis. 407, 77 N. W. 735; *Peterson v. Standard Oil Co.,* 55 Or. 511, Ann. Cas. 1912A, 625, 106 Pac. 337; *Groth v. Thomann,* 110 Wis. 488, 86 N. W. 178; *In re Harriott's Estate,* 145 N. Y. 540, 40 N. E. 246.)

A somewhat different problem confronts us here, in that the recovery sought over and above that which represents the value of the land actually taken is for damage sustained to the remaining tract of land after the severance of that taken. While the flooding caused by the raising of the dam might not exceed an elevation of 2,128 feet, still we can readily understand why this flooding might so cut up a tract

of land into small tracts and the water might so filter back under the soil of the remaining land as to do an immense lot of damage and render the remaining tract of but little value. The jury had the advantage of hearing all the evidence produced, which was very voluminous, touching these various questions, and they also saw and inspected the land. Even though the water was not at the high stage at the time the jury inspected the premises, it was easy enough for them to see the water-marks and the evidences of the flooding on the land, and to also see the effect it had had on vegetation. There was evidence which showed the production of certain portions of the land both before and after the flooding, and the different yields of various crops near to the water line and farther back. These were all proper questions to go to the jury for their consideration in determining the amount of damage to be allowed, and the verdict of the jury has not attempted to reverse presumptions arising from the laws of gravitation as suggested by counsel for appellant.

The objections urged by counsel to certain instructions given by the court on its own motion and to the refusal of the court to give a certain requested instruction is based upon substantially the same question heretofore considered. The instructions given were given on the theory that the jury was entitled to determine from all the evidence in the case the extent of the flooding of plaintiffs' land caused by reason of the erection of this dam by the defendant company. The instruction requested by the defendants was based upon the theory that there could not have been any flooding above the elevation of 2,126.5 feet above mean sea level, and the court was requested to give such an instruction. The court was clearly right in submitting this to the jury as a question of fact to be determined by them. The court had no right to discard the evidence of witnesses who testified to the actual seeing of the water spread out over the land and others who saw the water-marks on the land, and instruct the jury that they must believe the evidence of experts who testified to the height of the dam and the fact that it was impossible for water to be spread over the plaintiffs' land at any

greater elevation. If the dam had the effect of raising the level of the water in Coeur d'Alene river above the banks of the stream, then it must necessarily follow that when the high and flood waters come down the river in the early summer, they will, of course, flood more land for a time than was previously submerged, and at such times the high-water mark is bound to be above the elevation of the dam at Post Falls. If a flood in a stream of water did not raise the elevation of the water above the ordinary water line, then there would be no danger from floods, but we know it does do so, and one who raises by artificial means the ordinary high-water elevation should pay the damages caused to a land owner by reason of the flood waters reaching a still higher level and flooding still more land than would have been the case had the change not been made.

Another question has been urged here, and that is the remarks and argument of counsel for the respondents as made in the trial court. The record containing different remarks and argument made by counsel in the course of the trial to which appellant has excepted is too voluminous to insert in an opinion. We have examined it with care, and must say that it was of such a nature as could not well be approved by any court, and was calculated to prejudice the jury rather than to furnish them any aid in the way of *fact* or *argument* upon which to base a verdict. If there was any doubt as to the justice of the verdict in this case, the court would be justified in reversing the judgment on account of the prejudicial statements and arguments made by counsel for respondents (*Goldstone v. Rustemeyer*, 21 Ida. 703, 123 Pac. 635), but after an examination of the whole record, we are fully satisfied that the verdict in this case is eminently just and that the respondents have not obtained any larger verdict than they were entitled to recover.

We conclude that the judgment in this case ought to be affirmed, and it is so ordered. The same judgment and order will be entered in both appeals. Costs awarded in favor of respondents.

Stewart, C. J., and Sullivan, J., concur.