(October 28, 1913.)

## COMMERCIAL TRUST COMPANY, Respondent, v. IDAHO BRICK COMPANY, LTD., L. L. HAYNES and ABBIE R. HAYNES, Appellants.

[139 Pac. 1004.]

CORPORATION—CONTRACT—WHEN RATIFIED—FINDINGS OF TRIAL COURT—RECEIVER—POWER TO APPOINT—BILL OF SALE NOT A MORTGAGE.

1. Where H. owns practically all but a few shares of stock in a corporation and conducted the company's business and made contracts for the company and borrowed money for the benefit of the company which was used and appropriated by the company, and the obligations of H. were ratified and appropriated by the company for a period of five years, and no stock was issued until after the execution of the obligations and contracts made by H., the company is liable for such debts and contracts made on behalf of and for the benefit of the company.

2. Where the trial court made findings of fact, and it is conceded, that the evidence upon which the court finds is in conflict, this court will not reverse the findings where the evidence shows preponderance in favor of the findings.

3. Sec. 4329, Rev. Codes, subds. 2, 5 and 6, provides the grounds for appointment of receivers: "2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt. 5. In the case when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights. 6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

4. A court of equity has the power and authority in a proper case to appoint a receiver to take charge of the property and to

care for and protect the same, and to decree the charges therefor as a prior claim and lien against the property, paramount to all mortgages or other liens or encumbrances.

5. Where an instrument is in controversy as to whether it is a mortgage or a bill of sale, and the record shows that the trial court found, and the testimony sustains the findings, that said instrument was an absolute bill of sale and was intended as such both by the trust company and the brick company, such finding will not be reversed upon appeal.

6. *Held,* in this case that the evidence supports the findings and judgment.

APPEAL from the District Court of the Second Judicial District for Nez Perce County.   Hon. Edgar C. Steele, Judge.

An action to collect a debt and foreclose a mortgage. *Affirmed.*

Ben F. Tweedy, for Appellants.

The Idaho Brick Co. has an absolute right to have the brick, covered by the bill of sale, sold on decree of foreclosure under sec. 4520, Rev. Codes, and since the respondent was foreclosing the deeds as mortgages, the appellants had a right to have the bill of sale foreclosed in the one action.   (*Murphy v. Russell,* 8 Ida. 133, 67 Pac. 421.)

The court cannot hold that the bill of sale is not a part of the security which the respondent got from the Idaho Brick Company to secure its indebtedness to the respondent.

The authorities support the respondent's interpretation and construction of its security as it construed and interpreted its security in its complaint as originally filed and before it amended its complaint.   (*Bergen v. Johnson,* 21 Ida. 619, 123 Pac. 484; *Kelley v. Leachman,* 3 Ida. 392, 29 Pac. 849; *Wilson v. Thompson,* 4 Ida. 678, 43 Pac. 557; *Reitze v. Humphreys,* 53 Colo. 177, 125 Pac. 518; *Bartels v. Harris,* 4 Me. 146; *Eiland v. Radford,* 7 Ala. 724, 42 Am. Dec. 610; 6 Cyc. 992, notes 31, 32 and 33; *Pritchard v. Butler,* 4 Ida. 518, 43 Pac. 73; secs. 3388 and 3421, Rev. Codes.)

Having concluded that the bill of sale is a part of the entire security executed by the Idaho Brick Co. to the respondent, it is the duty of the court to enforce the purpose of the legislature to protect the "debtor from the summary sale of the mortgaged property by the creditor," by denying the right to foreclose the undestroyed part of the security and by refusing to render a deficiency judgment.   (*Rein v. Callaway*, 7 Ida. 634, 65 Pac. 63; *Commercial Bank v. Kershner*, 120 Cal. 495, 52 Pac. 848; *Mascarel v. Raffour*, 51 Cal. 242; *Woodward v. Brown*, 119 Cal. 283, 63 Am. St. 108, 51 Pac. 2, 542.)

The purpose of a receivership in a foreclosure action is to keep the mortgaged property for sale on the final decree of foreclosure, and to collect the rents, issues and profits arising from the mortgaged property, if covered by the mortgage, to apply them on the mortgage debt, or indebtedness, and not to seize the nonmortgaged property of the mortgagor.   (*Title Ins. and Trust Co. v. California Development Co.*, 164 Cal. 58, 127 Pac. 502.)

Subd. 2, sec. 4329, Rev. Codes, is the only authority for appointment of a receiver in a foreclosure action, and it limits the receivership to the mortgaged property.   (*Baker v. Varney*, 129 Cal. 564, 79 Am. St. 140, 62 Pac. 100; *Scott v. Hotchkiss*, 115 Cal. 89, 47 Pac. 45; *Eureka Mining etc. Co. v. Lewiston Nav. Co.*, 12 Ida. 472, 86 Pac. 49.)

If the appointment does extend to non-mortgaged property in a foreclosure action, the appointment is void. (*Staples v. May*, 87 Cal. 178, 25 Pac. 346.)

The corporation deed has no corporate seal affixed; and, therefore the respondent, before it had a right to introduce it, must prove affirmatively that it was authorized by the board of directors, or ratified by the board of directors. (*Fudickar v. East Riverside Irr. Dist.*, 109 Cal. 29, 41 Pac. 1024; *Salfield v. Sutter County etc. Reclamation Co.*, 94 Cal. 546, 29 Pac. 1105; 10 Cyc. 1019 (d).)

The president and manager of a manufacturing corporation cannot execute a mortgage on its property, machinery,

or a part thereof without the authorization of the board of directors, there being no habit or custom of the corporation from which such authorization of the board of directors can be implied, as in the case at bar, and no habit or custom of business as transacted by the president and manager, from which the authorization of the board of directors can be found as having been expressly given by those having a right to grant it. (Secs. 2728, 2731, 2789, Rev. Codes; 5 Cook on Corporations, 2d ed., sec. 716, p. 1766; 10 Cyc. 903, 910, 914, 907, 927, 1198, 1199, 1201; *Leggett v. New Jersey Mfg. etc. Co.,* 1 N. J. Eq. 541, 23 Am. Dec. 728; *Citizens' Securities Co. v. Hammel,* 14 Cal. App. 564, 112 Pac. 731; *Despatch Line of Packets v. Bellamy Mfg. Co.,* 12 N. H. 205, 37 Am. Dec. 203; *Trent v. Sherlock,* 24 Mont. 253, 61 Pac. 650; *Bank of Deer Lodge v. Hope Min. Co.,* 3 Mont. 146, 35 Am. Rep. 458; *Helena Nat. Bank v. Rocky Mt. Tel. Co.,* 20 Mont. 379, 63 Am. St. 628, 51 Pac. 829; 10 Ency. of Ev., pp. 6–15.)

Fred E. Butler, for Respondent.

"The board of directors and the corporation are bound by the contracts of a director or other person who has assumed to contract for the company, and has been allowed by the board to so act and contract." (Cook on Corporations, 6th ed., sec. 712; *Mills v. Boyle Mining Co.,* 132 Cal. 95, 64 Pac. 122.)

A person contracting with a corporation is not bound to know that a by-law requires that contracts of a certain kind shall be approved by the board of directors. (*Barnes v. Black Diamond Coal Co.,* 101 Tenn. 354, 47 S. W. 498; Cook on Corporations, sec. 725, and cases cited; *First Nat. Bank v. Eureka Lumber Co.,* 123 N. C. 24, 31 S. E. 348; *Produce Exch. Trust Co. v. Bieberbach,* 176 Mass. 577, 58 N. E. 162.) Notes of a corporation are valid, even though the by-laws provide that they shall be signed by the president and they are actually signed by another officer. (*Grant v. George C. Treadwell Co.,* 82 Hun, 591, 31 N. Y. Supp. 702; *Underhill v. Santa Barbara Land etc. Co.,* 93 Cal. 300, 28 Pac. 1049;

*Blanc v. Germania Nat. Bank,* 114 La. 739, 38 So. 537; 3
Clark & Marshall on Corp., 2721.)

Even though the directors have not especially authorized a
mortgage, yet if the person who owns practically all of the
stock takes part in the transaction and the corporation receives
the benefit of it, the mortgage is good. (*Auten v. City Electric St. R. Co.,* 104 Fed. 395; 10 Cyc. 351, 352; *Louisville etc.
Ry. Co. v. Louisville Trust Co.,* 174 U. S. 552, 573, 19 Sup.
Ct. 817, 43 L. ed. 1081.)

"A transfer of title by a debtor to a creditor in payment
is in effect a sale and not a mortgage." (35 Cyc. 37; *Hammer v. O'Laughlin,* 8 Wash. 393, 36 Pac. 257; *Krippendorf-
Dittman Co. v. Trenoweth,* 16 Colo. App. 178, 64 Pac. 373;
*Camp v. Thompson,* 25 Minn. 175; *Prentiss Tool etc. Co. v.
Schirmer,* 136 N. Y. 305, 32 Am. St. 737, 32 N. E. 849; *Cohen
v. Stewart,* 98 N. C. 97, 3 S. E. 716; *Powell v. Kelly,* 82 Ga.
1, 9 S. E. 278, 3 L. R. A. 1391.)

A creditor has only to establish the fact that the corporation of which he is such creditor is insolvent to make it the
duty of the proper court to appoint a receiver to take possession of the property of such corporation and close up its
affairs. (*Oleson v. Bank of Tacoma,* 15 Wash. 148, 45 Pac.
734; *Davis v. Consolidated Coal Co.,* 41 Wash. 480, 84 Pac.
22.)

The old rule has by statute been changed in Idaho as the
supreme court of Washington says it has been in that state,
so that, at the present time, if a corporation is insolvent, that
is sufficient to justify the appointment of a receiver, whether
the creditor seeking to collect his debt has reduced his debt
to judgment or not. (*Gibbs v. Morgan,* 9 Ida. 100, 72 Pac.
733; *Hall v. Nieukirk,* 12 Ida. 33, 118 Am. St. 188, 85 Pac.
485.)

Upon the showing made in the complaint, the trial court
did have the power to appoint a receiver. (*Dalliba v. Winschell,* 11 Ida. 364, 114 Am. St. 267, 82 Pac. 107; *Hewitt v.
Great Western Beet Sugar Co.,* 20 Ida. 235, 118 Pac. 296; 34
Cyc. 18, 25.)

STEWART, J.—This action was brought by the respondent against the appellants for the purpose of recovering a money judgment against the Idaho Brick Company, Ltd., a corporation, and to foreclose two certain trust deeds or mortgages given as security for money advanced by the respondent to the appellants, the Idaho Brick Company. One of the trust deeds was executed by the brick company on real estate owned by it, and the other trust deed was executed by the defendants L. L. Haynes and Abbie R. Haynes on property owned by Abbie R. Haynes.

A decree was entered in favor of the respondent against the Idaho Brick Company for the sum of $35,152.04, less the sum of $3,362.76, or $31,789.28, and the further sum of $2,747, attorney's fees, a total of $34,536.28. The decree was also for foreclosure of the two trust deeds or mortgages. The $3,362.76 was a credit allowed by the court on account of brick sold by the respondent after the commencement of the action.

At the time of the filing of the complaint, William F. Stilz was appointed receiver in the action, and he took charge of the real estate and business of the brick company.

The complaint alleges that the brick company, in violation of a written agreement of October 31, 1910, entered into between the brick company and the trust company, sold and disposed of brick belonging to the trust company and refused to turn over the proceeds and appropriated $500 from such sale, and that the entire assets of the company, consisting of real property, the business, book accounts, equipment and goodwill and all other assets were of a value not to exceed $15,000, including the real property of the defendant, Abbie R. Haynes, for which one of the trust deeds was executed, and that all of said property was insufficient to discharge the debt due plaintiff, and that the brick company was insolvent.

It is further alleged in the complaint as originally filed that the defendant, on the 5th of November, 1910, as further security for payment of its indebtedness to the plaintiff, executed an assignment or bill of sale of all its stock or product of brick manufactured or to be manufactured then located on the premises, and that said assignment or bill of sale con-

tained a provision that the brick company should turn over to the trust company the entire proceeds from the sale of such manufactured and to be manufactured brick. This latter part of the complaint it appears was stricken out, and subsequently the court held in its findings and conclusions that the above-mentioned instrument was a bill of sale absolute and that the transaction evidenced by said instrument was a sale. After this amendment of the complaint, the cause was tried as an action for the foreclosure of the two trust deeds. The trust deeds and the bill of sale were executed November 5, 1910.

. Upon the appointment of the receiver he took charge of the brick company's plant, including the real and personal property, except the brick that was claimed by the Commercial Trust Company under its bill of sale. At the time of the taking of the testimony the receivership had not been terminated, but the brick claimed by the trust company under the bill of sale and disposed of up to the date of trial has been accounted for by the respondent.

There are twenty-seven errors assigned, and the appellant presents the case upon three classes of propositions, based upon three different premises: 1st, that the instruments, including the bill of sale, the deeds and the October agreement are each and all valid and enforceable in a court of equity. 2. That the instruments named above are void, invalid and cannot be enforced in a court of equity. 3. That all the instruments executed by Haynes for and on behalf of the corporation are invalid except the bill of sale.

The trial court made findings of fact and conclusions of law upon which a decree was entered in accordance with the findings of fact and the conclusions of law, in substance as follows: That the Commercial Trust Company recover from the defendant Idaho Brick Company, Ltd., the sum of $31,789.28, and for attorney's fees $2,747 and costs; that a certain deed dated November 5, 1910, executed by the defendant the brick company to plaintiff, is a mortgage for the purpose of securing the sums of money above mentioned. (Then follows a description of the property.) It was also

decreed "that a certain deed dated November 5, 1910, executed by the defendants L. L. Haynes and Abbie R. Haynes, his wife, to plaintiff is a mortgage given to secure the sums of money above mentioned," describing the property. The court also decreed that a certain instrument dated November 5, 1910, and in form a bill of sale of stock and product manufactured and in process of manufacture at the yards of the brick company, to plaintiff, was at all times a bill of sale and sale absolute of the personal property described in the instrument; also that the two deeds of real property mentioned are foreclosed as mortgages and the defendants to this suit and each of them and all persons claiming by, through, or under them or any of them are foreclosed of all right, title or interest and equity of redemption in and to all of said property and each part thereof, saving only the statutory right of redemption; that said real property be sold as provided by law and that the proceeds be applied upon the money to which the plaintiff is decreed to be entitled. Then follows an order that a certain thirty-acre tract of land be sold first and if the amount of money realized therefrom be insufficient to pay the amount of the decree awarded plaintiff that a certain twenty-two acre tract described, the property of the defendants, L. L. Haynes and Abbie R. Haynes, his wife, be sold and the proceeds thereof be applied on the decree; and if the total amount of sums realized from the sales of all the said property be insufficient to pay the amount of the decree the plaintiff is declared to be entitled to, that plaintiff have a deficiency judgment for balance against the brick company; that upon the sale of said real property the purchaser be put into possession thereof; that if no redemption of the same be made within the statutory period that sheriff's deed be executed to such purchaser. Costs were allowed. This appeal is from the decree.

The record consists of more than two hundred pages of evidence and a number of exhibits, and it must be conceded that the evidence is in conflict and many questions of fact have been determined by the court, and the evidence being extensive upon each of these questions and in conflict, the findings

of the trial court upon what the court deems the preponderance of the evidence should not be reversed upon the rules announced by this court upon the reversal of a judgment or verdict upon the preponderance of evidence or the inconsistency of the amount of the judgment. (*McGuire v. Lamb,* 2 Ida. 378 (346), 17 Pac. 749; *McCrea v. McGrew,* 9 Ida. 382, 75 Pac. 67; *Vollmer Clearwater Co. v. Rogers,* 13 Ida. 564, 92 Pac. 579; *Salisbury v. Spofford,* 22 Ida. 393, 126 Pac. 400; *Petajaniemi v. Washington Water Power Co.,* 22 Ida. 20, 124 Pac. 783; *Brinton v. Steele,* 23 Ida. 615, 131 Pac. 662.)

Many pages of appellant's brief are devoted to argument that Stilz, in his conduct as receiver and in performing his duty and in controlling the property after he was appointed, did not act in good faith and that he did not proceed as the law directed and did not perform his duty as the law required. We have carefully examined these questions and we find no merit in such contention. The trial court has found against the appellant and the evidence supports the findings.

The following authorities support this question: The provisions of the statute in relation to the appointment of a receiver are contained in sec. 4329, Rev. Codes, among which are subds. 2, 5 and 6 as follows:

"2. In an action by a mortgagee for the foreclosure of his mortgage and sale of the mortgaged property, where it appears that the mortgaged property is in danger of being lost, removed or materially injured, or that the condition of the mortgage has not been performed, and that the property is probably insufficient to discharge the mortgage debt."

"5. In the case when a corporation has been dissolved, or is insolvent, or in imminent danger of insolvency, or has forfeited its corporate rights;

"6. In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

The sections of this statute are similar to sec. 236 of the Washington Code (Hill), and they are construed in the case of *Oleson v. Bank of Tacoma,* 15 Wash. 148, 45 Pac. 734. This case was followed in *Davis v. Consolidated Coal Co.,* 41 Wash. 480, 84 Pac. 22.

In the case of *Dalliba v. Winschell*, 11 Ida. 364, 114 Am. St. 267, 82 Pac. 107, and *Hewitt v. Great Western Beet Sugar Co.*, 20 Ida. 235, 118 Pac. 296, this court very clearly approves the doctrine contended for by counsel for respondent: "A court of equity has the power and authority in a proper case to appoint a receiver to take charge of the property and to care for and protect the same, and decree the charges therefor as a prior claim and lien against the property, paramount to all mortgages or other liens or encumbrances." We think there is no question as to the authority of the court to appoint a receiver and that it was necessary to appoint a receiver to take charge of the property and care for and protect the same.

Appellant urges very earnestly the validity of the corporation and the acts of the brick company involved in this case. The court has made findings upon these contentions, and the evidence supports the court's findings, that the law was complied with and the acts were valid acts of the brick company, and it would be a waste of time to recite the evidence upon this question. There can be no question in the minds of the court as to the validity of the rights of the plaintiff to recover upon the notes sued upon or the question as to such notes being properly secured by trust deeds which were intended to be security or a mortgage securing said indebtedness.

The appellant also contends that the instrument of November 5, 1910, is a mortgage and that having been foreclosed as a mortgage the entire proceedings in the case are void and should be set aside. This question seems to have been before the trial court and the pleadings were amended and evidence was introduced, and the trial court found and the testimony sustains the finding that said instrument was an absolute bill of sale and was intended as such both by the trust company and the brick company, and this court is satisfied that the finding of the trial court was sustained by the evidence. The finding of the trial court under these circumstances will not be disturbed.

It appears clearly and conclusively in this case that L. L. Haynes practically owned the Idaho Brick Company and con-

ducted the company's business and made contracts for the company and borrowed money for the benefit of the company which was used and appropriated by the company, and that the obligations of Haynes were fully ratified and appropriated by the Idaho Brick Company for five years and that no stock was issued until after the execution of the instruments of October and November, 1910.

In Cyc. 349–352, the author discusses the subject, and on p. 351, sec. 5, says: "There are decisions to the effect that a corporate by-law is binding on third persons doing business with the corporation, who have knowledge of the by-law. But it is suggested that this principle can have no operation except where the by-law has established a course of business on the part of the corporation known to the third person; where it takes the form of a regulation of the business of the corporation as toward the public, as in the case of a common carrier of passengers; or where the third person has been in some way affected with knowledge of it and brought into privity with it, so that it may operate as a contract between the corporation and himself. In other cases it operates merely as a regulation among the members of the corporation *inter sese,* or as between the corporation and its members, and has no effect as a law, upon third persons, and no influence upon contracts between the corporation and other parties. A third person can enforce them only when he shows some privity, as where he has advanced money or other value upon the credit of a corporate by-law or the like."

In the recent case of *Mantle v. Jack Waite Mining Co.,* 24 Ida. 613, 135 Pac. 854, 136 Pac. 1130, this court discusses circumstances and conditions which present some facts which are somewhat similar to the facts involved in this case, and the relationship between the controlling persons and the corporation organized by such parties, and also other parties, and the validity of contracts made by the parties dealing with a prospective corporation which adopted and ratified the acts of the parties dealing with the corporation finally incorporated.

We find no other assigned errors which have any merit or which justify a further discussion of assignments of error or the law governing the case or the sufficiency of the evidence.

The judgment is *affirmed.* Costs awarded to the respondent.

Ailshie, C. J., and Sullivan, J., concur.

### ON REHEARING.

#### (April 13, 1914.)

AILSHIE, C. J.—A rehearing was granted, and we have again heard and examined this case with diligence and care. Appellants are perhaps correct in some of the technical legal contentions they make as to the strict observance by the parties hereto of the rules and requirements that have generally been recognized as surrounding and protecting the transactions of business corporations. They are confronted, however, by the more important and overwhelming consideration that the equities of the case are against them. Counsel for appellants cites much ecclesiastical law pronouncing "woe unto . . . . scribes and Pharisees, hypocrites" (23 Matthew, 23–28; 11 Luke, 52; 15 Matthew, 19 and 20, and 7 Matthew 18–20) and seems to think these citations peculiarly applicable to his adversaries. The authority from which the foregoing citations are made commands the highest respect in this court, which ever endeavors to be guided by the spirit of its precepts in a human endeavor to administer justice under the laws of this state. The foregoing citations, when brought to bear on the facts and circumstances of this case, remind us forcibly of that other even more imperative command of ecclesiastical equity that "Whatsoever ye would that men should do to you, do ye even so to them" (7 Matthew, 12), the observance of which would doubtless have saved both litigants' and courts' time and perplexity in this case.

The facts of this case are set forth at considerable length in the original opinion, and so it would be useless to reiterate

them here.   Judgment was entered for an aggregate amount of $34,536.28, and a decree of foreclosure was entered.   It appears, and indeed is conceded, that the property involved in the action is not worth anything like the amount of the judgment.   The appellants have contended that they should have had more credits than they have received and that the respondent has taken possession and disposed of a considerable amount of property for which no credit has been allowed.   On this point the record is so vague and uncertain that the court would not feel justified in disturbing the findings of the trial court in this respect.   But counsel for respondent on the oral argument stated that a deficiency judgment would be of no value to the respondent and that the respondent could not realize anything like the amount of the judgment out of the property involved, and that the respondent' was willing to have the court reduce the judgment in a sum not exceeding $10,000.

In view of the fact that there is no dispute or question about the appellant corporation receiving the money which it is charged was loaned, and that the same has not been paid back to the bank, and in view of the further fact that there is no one interested in this case who could be termed an innocent third party or who has parted with any money or thing of value for the benefit of the corporation since the incurring of this indebtedness or execution of this mortgage, we feel that the technical objections as to the execution of the mortgage should be brushed aside and subordinated to the more vital question of the equities of the case.

This loan was made and the mortgage was subsequently executed as security for the money advanced, and the corporation had the benefit thereof and ought to pay the same.   No legal or equitable reason has been presented to us why this should not be done.   We have concluded that the judgment in this case should be modified to the extent of reducing it in the sum of $10,000, and the cause is hereby remanded to the trial court with direction to enter a modified judgment reducing the original judgment in the sum of $10,000, and

as so modified the judgment of the lower court will be affirmed.

The appellants have already paid the costs of filing this appeal and the transcripts and their briefs. The respondent will pay its own costs incurred on this appeal.

Sullivan, J., concurs.