## Miller *v.* Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company.

[No. 6,644.   Filed April 22, 1909.]

1. EMINENT DOMAIN.— *Highways.— Abandonment.— Transfer of Easement.*—Land appropriated for highway purposes reverts to the owner of the fee when the highway is abandoned, and such easement cannot be transferred to another, except by the owner. p. 543.

2. EMINENT DOMAIN.— *Railroads.— Damages.— Lands Formerly Used as Highway.*—Where a railroad company condemns land for the relocation of a highway an interurban railroad company running alongside thereof is not liable for damages for the destruction of a wall and trees, where such damage was done in the relocating of the highway and had been paid for. p. 543.

3. EMINENT DOMAIN.—*Railroads.—Interurban.—Highways.—Relocation.—Damages.*—Where a railroad company whose right of way adjoined a public highway upon which an interurban railroad company operated its cars, desired to straighten its tracks, and for that purpose condemned another strip for "highway purposes," it must be held that the damages paid for such condemnation included the sum due for the operation of the electric company's cars thereon.  p. 543.

4. EMINENT DOMAIN.— *Railroads.— Condemnation of Interurban Railroad Right of Way.*—A railroad company cannot condemn for its right of way, the land used by an interurban railroad company for its right of way. p. 544.

5. EMINENT DOMAIN.—*Railroads.—Condemnation by One Company for Another.—Transfer.*—One railroad company can neither condemn lands for another company, nor transfer its easement to another. p. 545.

6. RAILROADS.—*Rights of Way.—Abandonment.—Reversion.*—When a railroad company abandons land condemned for a right of way, the title reverts to the owner of the fee, and he may recover damages for its subsequent use. p. 545.

7. RAILROADS.— *Eminent Domain.—Damages.—* Where a railroad company condemned a strip of land for "highway purposes" and an adjoining strip for "railroad purposes," and by agreement permitted an interurban railroad company to use a strip containing a part of each of said strips, such interurban company is liable in damages to the owner of the land for the use of such strip. p. 545.

From Dearborn Circuit Court; *George E. Downey*, Judge.

Action by Job Miller against the Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company. From a judgment for defendant, plaintiff appeals. *Reversed.*

*McMullen & McMullens, Warren N. Hauck* and *Louis B. Ewbank,* for appellant.

*Martin J. Givan, Frank B. Shutts* and *Stanley Shaffer,* for appellee.

ROBY, J.—Action by appellant for damages caused by the relocation of appellee's interurban street railway tracks through appellant's farm. The complaint was in five paragraphs. Six paragraphs of answer were filed, demurrers to three of which were sustained and to three overruled. The issues were closed by a reply of general denial. Trial by jury, verdict and judgment for defendant.

Errors relied on are overruling demurrers to paragraphs of answer and motion for a new trial.

Uncontradicted evidence established the following facts: Appellant owns a farm in Dearborn county through which run the tracks of the Cleveland, Cincinnati, Chicago & St.

Louis Railway Company, the Lawrenceburg and Elizabethtown highway, and the tracks of the appellee, Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company. In the year 1902 the Cleveland, Cincinnati, Chicago & St.. Louis Railway Company, or the "Big Four" as it is called, desired to make certain changes in the alignment and grades of its tracks through the farm of appellant. The line of the defendant interurban company was operating under a franchise on the highway aforementioned, which paralleled the Big Four for a part of the distance in which it was desired to make a change of location of the roadbed. The Big Four, by condemnation proceedings, appropriated one strip "for highway purposes" and another "for railroad purposes." The Lawrenceburg and Elizabethtown highway was then relocated on the first-named strip and the interurban railway upon both strips, making room for the change in the tracks of the Big Four. The relative situations of the relocated tracks are better understood by reference to the accompanying plat:

EXPLANATIONS

— — — —Present Highway
· · · · · Defendant's Street R R
— · — · — Big Four R. R.
A, B, C, D—Railroad ground occupied by defendant.
C, D, E, F—Plaintiff's dooryard occupied by defendant
C, D, G, H—Condemnation "for highway purposes"
B, C, D, H, J, I—Condemnation "for railroad purposes."

By this action it is sought to recover from appellee damages caused by its use of the land taken. The principal damage complained of was the destruction of a large stone wall and steps in front of plaintiff's dooryard, the destruction of trees and shrubs, and the increased danger to persons leaving and coming to the premises.

The strip E, F, C, D, the taking of which caused the principal damage, is a part of the strip C, D, G, H, which was not taken for railway purposes, but for "highway purposes." E, F, C, D, although described in the instrument of appropriation as being taken for "highway purposes," is shown by the evidence to be a *cul-de-sac*, and not used as a public highway. It is 150 feet long and extends beyond the point where the highway turns south. The statute authorizing a condemnation for highway purposes does not permit the taking of land for any other use. Although condemned and paid for, for use as a highway, that use was abandoned, and it has been used for interurban railway purposes only. When the strip was abandoned for use as a highway by placing the highway elsewhere than upon it, the title then reverted to the appellant, and he is entitled to recover damages for its use. The amount of these damages must be restricted to compensation for the land actually taken by the appellee, and cannot include damages caused by tearing down the wall, destroying the trees, shrubs, etc., for this damage was done in preparing for the relocation of the highway, and has already been paid for. A moving of the highway must have contemplated a moving of the interurban tracks. The increased inconvenience and danger and the damage done by appellee's tracks as relocated may possibly be greater than in the former location, but we consider that the compensation allowed appellant for the land "for highway purposes" also contemplated the damages caused by the additional servitude on the highway of the appellee's tracks.

The strip B, C, D, A, was condemned by the Big Four railway company for "railway purposes." Said company could not, under the general statutes, condemn the property of the Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company, it already being devoted to a public use (*Indianapolis, etc., R. Co.* v. *Indianapolis, etc., Transit Co.* [1904], 33 Ind. App. 337); but it came to a friendly agreement with the appellee, as shown by the following instrument which is in the record:

"This agreement made as of December 20, 1902, between the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, as first party, the Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company, as second party, witnesseth:

Whereas, the first party is engaged in making certain changes in the alignment and grades of its tracks in the vicinity of Lawrenceburg Junction, Dearborn county, Indiana; and,

Whereas, such changes will necessitate a partial rearrangement and relocation of the tracks of the second party; and,

Whereas, the second party desires to change its location between North Bend and Cleves and between Valley Junction and Elizabethtown, both of which changes require the securing of property from said first party;

Now, therefore, it is agreed by the parties hereto:

\*　　\*　　\*

(2) The second party shall convey to the first party by quitclaim deed so much of second party's property as is needed by the first party to change its tracks in front of Job Miller's, near Lawrenceburg Junction.

(3) The first party shall remunerate the second party for the cost, if any, of the right of way near Job Miller's house, which the second party must acquire in place of right of way to be deeded to first party as per article two of this agreement.

\*　　\*　　\*

(6) The first party shall at its own expense make the changes in grade of second party's track from the road near Job Miller's west line to be agreed upon on the ground.

\*　　\*　　\*

(16) This agreement shall be binding upon the parties hereto, their successors and assigns."

Under the law and this contract the object desired might have been attained had the appellee instituted a condemnation proceeding against the strip last mentioned; but instead the Big Four railway company instituted it. A valuation was set by appraisers. Both the railway company and Miller appealed from the award, but both later dismissed their objections and Miller accepted the money. The petition of the railway company proceeded upon the theory that the land was to be used by it: "Said Cleveland, Cincinnati, Chicago & St. Louis Railway Company does hereby appropriate a right of way for its railroad track and the right to construct thereon such track or tracks as may be necessary to maintain and operate its railway track or tracks," and no mention is made of the Cincinnati, Lawrenceburg & Aurora Electric Street Railroad Company. The condemnation gave the Big Four railway company the right to use the strip for its purposes, but did not authorize a trade of the property to another company. "There is no authority in the act for one railroad company to appropriate land for the use of another railroad company." *Swinney* v. *Ft. Wayne, etc., R. Co.* (1877), 59 Ind. 205, 219. When the Big Four railway company abandoned the property condemned for its railroad purposes, the title to such property reverted to the owner of the fee, and he is entitled to recover damages for its use, but not for the changes which had theretofore been made by said railway company. Such damages are restricted to compensation for the land actually taken.

The verdict of the jury was not sustained by sufficient evidence and was contrary to law. The judgment is reversed, and the cause remanded, with instructions to grant a new trial, and for further proceedings not inconsistent herewith.