[Civil No. 1234.  Filed December 19, 1912.]

[128 Pac. 810.]

FIRST NATIONAL BANK OF CLIFTON, Appellant, v. CLIFTON ARMORY COMPANY, a Corporation, W. G. JOLLY and the L. W. BLINN LUMBER COMPANY, a Corporation, Appellees.

1. CHATTEL MORTGAGES—AFFIDAVITS—SIGNATURE.—Unless required by statute, an affidavit attached to a chattel mortgage need not be signed by the mortgagee; it being sufficient if it appears that it was taken by a competent officer.

2. CHATTEL MORTGAGES—VALIDITY — AFFIDAVIT.—A chattel mortgage purporting to be given by a corporation, and reciting that the corporation had caused it to be signed by its president, was not signed by such officer, and did not bear the corporate seal, but the appended

affidavit was signed by the president and acknowledged before a notary public. *Held,* that, the mortgage having been recorded, it was valid under Civil Code of 1901, paragraph 3282, providing that no chattel mortgage shall have any legal effect unless the residence of the parties, the sum to be secured, and the rate of interest shall be set out, and the mortgagor and mortgagee shall make affidavit that it was *bona fide;* it being the obvious intention of the parties in signing the affidavit to subscribe to the mortgage, and the statute not requiring the affidavit to be signed.

3. CORPORATIONS—ACTS OF CORPORATIONS—SEAL.—Unless sealed with its corporate seal, a chattel mortgage alleged to have been executed by a corporation cannot be presumed to be the result of the corporate act, and the party relying on it must show that the executing officer was authorized, hence in the absence of that preliminary proof it is inadmissible in an action against the corporation.

4. TRIAL—PROVINCE OF COURT.—As personal property does not become a fixture merely because affixed to the soil, the question of whether a building was personalty or realty cannot be determined by the trial court merely upon its autoptic inspection, for a presiding judge cannot give judgment on his personal and private knowledge.

5. FIXTURES—PERSON ENTITLED.—Where a building is a fixture, it, of course, belongs to the owner of the soil upon which it rests as against a chattel mortgagee.

6. CHATTEL MORTGAGES—ACTIONS—EVIDENCE—POSSESSION.—Where it was sought to enforce a chattel mortgage upon a building which was claimed to be personalty, evidence that after delivery the mortgagee took possession was material on the question of the intervening rights of third persons; it appearing that there were defects in the formal execution of the mortgage which, while not invalidating the instrument *inter partes,* prevented it from giving notice by recordation.

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for the County of Greenlee. E. W. Lewis, Judge. Reversed and remanded.

The facts are stated in the opinion.

Mr. L. Kearney, for Appellant.

Messrs. Kibbey, Bennett & Bennett, for Appellee L. W. Blinn Lumber Co.

FRANKLIN, C. J.—This action involves the rights, respectively, of a chattel mortgagee and a judgment creditor of

the Clifton Armory Company to a certain building in Clifton, Arizona, the building having been erected by the Clifton Armory Company on leased premises. The owner of the land was not made a party to the suit. The case before us is not tinctured with fraud or intimation of it.

The appellant assigns as error the rejection of evidence and the insufficiency of the evidence to sustain the judgment. The record in the case is very unsatisfactory, and from the record on the present appeal we can only determine as the law of the case the one question: Is the instrument offered in evidence by the appellant sufficient in form of its execution as a chattel mortgage so as to entitle it to be filed in the office of the county recorder and thereby import constructive notice to creditors of the mortgagor? The character of the building as a real fixture or a personal fixture, in other words, whether the building is personal property or a part and parcel of the freehold, must on the state of this record and on the present appeal be left to be determined in the first instance by the lower court on the retrial of the case.

Paragraph 3282, Revised Statutes of Arizona (section 23), provides: "No chattel mortgage shall have any legal force or effect except between the parties, unless the residence of the mortgager and mortgagee, the sum to be secured, the rate of interest to be paid, when and where payable, shall be set out in the mortgage; and the mortgager and mortgagee shall make affidavit that the mortgage is *bona fide* and made without any design to defraud or delay creditors, which affidavit shall be attached to such mortgage."

The instrument before us contains all of the recitals required by the foregoing provision. But it is contended that the mortgage is not properly executed because, at the end of the mortgage proper and before the affidavit required to be attached to the mortgage, the instrument is not signed by the mortgagor. The note set out in the instrument and to secure the payment of which the mortgage purports to have been given is signed "Clifton Armory Company, by Paul Reisinger, President, B. R. Lanneau, Secretary," with the corporation seal affixed. At the end of the mortgage and before the required affidavit, it is recited: "In witness whereof, the said Clifton Armory Company has caused these presents to be signed by its president . . . "—but without any signa-

ture of the corporation or its officers, or the seal of the corporation affixed. Then follows the jurat and affidavit attached to the mortgage and signed by the president and secretary of the Clifton Armory Company, mortgagor, and the cashier of the First National Bank of Clifton, mortgagee. The affidavit is subscribed and sworn to before a notary public with his official signature subscribed thereto and his official seal affixed. The execution of the mortgage is also acknowledged before a notary public by the said Reisinger and Lanneau, as president and secretary, respectively, of the Clifton Armory Company. However, we do not attach much, if any, importance to this acknowledgment, as this appeal does not present the case of a copy of the mortgage being presented to the recorder for filing instead of the original instrument. It is well settled that it is not necessary that the parties should sign the affidavit attached to a chattel mortgage unless such signature is required by some statute. *Bloomingdale* v. *Chittenden,* 75 Mich. 305, 42 N. W. 836; *Norton* v. *Hague,* 47 Minn. 405, 50 N. W. 368; *Garrard* v. *Hitsman,* 16 N. J. L. 124; *Alford* v. *McCormac,* 90 N. C. 151; *Shelton* v. *Berry,* 19 Tex. 154, 70 Am. Dec. 326. It is sufficient if it appears that the affidavit was taken by a competent officer. *Ede* v. *Johnson,* 15 Cal. 53; *Pope* v. *Kirchner,* 77 Cal. 152, 19 Pac. 264; *Lutz* v. *Kinney,* 23 Nev. 279, 46 Pac. 257; *A. P. Hotaling & Co.* v. *Brogan,* 12 Cal. App. 500, 107 Pac. 711; *Fairbanks, Morse & Co.* v. *Getchell,* 13 Cal. App. 458, 110 Pac. 331.

While under our statute we do not deem it essential to the validity of the mortgage that the required affidavit be subscribed to by the parties, good practice would suggest to one not to hazard an unsigned affidavit in any important matter. When a security is given in the form of a chattel mortgage, it is the purpose of the law to protect parties from each other and to see that third parties who have rights shall not be prejudiced through the want of care or honesty of parties to the mortgage, and the parties, in order to receive such protection, should be cautious in observing the requirements of the statute in the execution and filing of such instruments. While the mortgage in question is not drawn with that precision to be expected of one skilled in the legal accuracies required, we are of the opinion that the method employed in the

execution of the instrument before us, taking in view the whole instrument, shows the true object and intent to be the execution of the mortgage as the act of the corporation, and entitled to be filed in the office of the county recorder as constructive notice to those acquiring rights in the property. That the signatures are at the end of the affidavit and not at the end of the instrument proper we do not think should be held to defeat the rights of the mortgagee.

In this case the seal of the Clifton Armory Company, a corporation, mortgagor, was not affixed to the mortgage. And, while a seal is not essential to the validity of a chattel mortgage alleged to have been executed by a corporation, still in its absence there is no presumption that the act is a corporate act, and it devolves upon the party relying upon the mortgage to show that the officer or agent had authority to execute it. So in the absence of such preliminary proof the court was right in excluding it.

Mr. Thompson in his work on Corporations, volume 2, section 1928, says: "A general rule may be stated to the effect that, when an instrument is produced with the impression of the seal of the corporation, it is *primà facie* the act of the corporation, and no evidence is necessary to show by whom it was affixed, or that any steps were taken to confer authority on the officer or agent who affixed it, or that any steps had been taken by the corporation to authorize the execution of the instrument."

The chief effect of the use of a seal by the corporation is with reference to the burden of proof, and while the mere affixing of the corporate seal does not make the writing the act of the corporation unless it was affixed by authority, it follows, of course, that the *primà facie* case may be overcome by showing the seal to have been affixed without proper authority from the corporation.

What standing the Blinn Lumber Company, one of the parties defendant, has in the case cannot be ascertained from the record. True it is that both appellant and appellee intimate that a sheriff's certificate of sale was put in evidence, but the transcript of the record certified as correct by the trial judge discloses the following: "Mr. Laine (counsel for the L. W. Blinn Lumber Company): I want to introduce in evidence the duplicate certificate of sale under the judgment as brought

out by Mr. Kearney.   Mr. Kearney (counsel for plaintiff):
I'll object to this because it does not show that they have any
interest at all in the property in litigation.   This is only
a house we have here, and they claim under an execution.''
There was no other disposition of the duplicate certificate
by either the court or counsel, but on inspection we find that
the duplicate certificate sent up with the record is marked
as Plaintiff's Exhibit ''A.''   The record thereupon shows as
follows: ''The Court: Mr. Reporter, let the record show that
court has had a view of the premises and is taking the view
of the premises into consideration in connection with the de-
termination of the case.   Now this building is in no sense a
temporary structure.   It is a large structure.   It is a large
structure and appears to be set upon permanent foundations
and in every way partakes of the character of realty and none
of the characters of a fixture.   The courts have been very
liberal in regard to characterizing fixtures as personalty or
realty in accordance with the intent of the parties, etc.   (Re-
porter's note: Court was held in, the Armory building in
question.)''

   There was no evidence in the record as to the character
or status of the building being either a real fixture or a per-
sonal fixture.   Thus it was that the learned judge of the trial
court decided that the building in question was a real fixture,
in other words, a part and parcel of the freehold, solely by an
autoptic inspection.   Assuming that the court was empowered
to have a view of the premises in consequence of its ordinary
common-law functions, and irrespective of statutory authority
conferring the power, and that the propriety of inspection
and view may not be impugned because it rested in the sound
discretion of the court to clear up by the view some matter
or thing involved in obscurity by the evidence in the case,
and that such view appeared to the court as necessary to a
just decision in the case, nevertheless we are not prepared
to hold that a *res gestae* or constituent fact may be deter-
mined by such view alone.   That a presiding judge cannot
give judgment on his personal and private knowledge is a
doctrine as old as Chief Justice Gascoigne, and has at all
times been regarded as good law: Chamberlayne, Modern Law
of Evidence, volume 1, paragraph 574.   The old common-
law doctrine of physical attachment expressed in the maxim,

"*Quicquid plantatur solo, solo cedit,*" meaning, "Whatever is affixed to the soil belongs to the soil," was long ago exploded. As personal property grew in amount and importance before the law, and the spread of commerce and business enterprise increased and diversified the purposes for which real property could be employed, and to encourage and promote industry through the avenues of trade and commerce, numerous exceptions were ingrafted upon the maxim quoted, embracing trade fixture, domestic fixtures, and in this country agricultural fixtures. A careful author has given the following definition of fixtures, which is perhaps as comprehensive as the subject will permit, namely: Fixtures are "things associated with, or more or less incidental to, the occupation of lands and houses or either thereof, and with regard to which the question most frequently arising is that of their removability by the person claiming to remove them": Brown's Law of Fixtures, 4th ed., pp. 1–3.

And speaking of the *criteria* for determination whether fixtures are realty or personalty, Mr. Reeves in his late work on Real Property, volume 1, page 15, section 11, says: "So long as one and the same person remains the absolute and unrestricted owner of land and the things placed upon it, little thought is often given to the question whether such things are real or personal in character. But when the rights of other persons begin to attach to the property, as by the death intestate of its owner, or by his devising, selling, leasing, mortgaging, or otherwise encumbering or disposing of the land, the question as to what shall pass or be retained as part of the realty frequently becomes very material. Back of that question, as applied to any specific article, is the inquiry, What was the nature of that article while it was there upon the land before the question of ownership was mooted? And this last inquiry naturally suggests the further question, *What is the probable or reasonably presumable intent with which it was affixed to or used in connection with the land?* Do the circumstances of its annexation and use indicate that it was meant to remain personalty or to become a part of the realty? This is the primary and most important matter for investigation, and that to which the other *criteria* are largely subsidiary. One of the other tests is the *nature of the annexation.* This involves also an examination into the effects which

the removal of the article in question would have upon the realty.   And the third chief inquiry is *concerning the parties between whom the question of ownership arises,*—their relations to each other and to any other person who may have affixed the article, the part, if any, which each took in its annexation, and their respective interests in the land to which it is annexed or with which it is associated.''

So it is apparent that this important question may not be determined by the court from a mere view of the physical attachment of the building to the land.   As we have observed, the owner of the land is not a party to the suit, and it may be that a complete determination of the controversy cannot be had without the presence of the owner of the property.   If so, the court has power, under paragraph 1345, Revised Statutes of Arizona of 1901, to order that he shall be brought in.

Should it be determined that the building in question is real property, then of course it follows that it belongs to the owner of the lots whereon it is situate, and it is a fixed principle of sound law that a man cannot convey to another a better title than he has himself, and cannot transfer the title of another to property without his consent.

Another contention arose as to the possession of the building by the mortgagee as giving notice of the mortgage.   Even if there were defects in the formal execution of the mortgage such as would prevent its giving notice by being filed in the office of the county recorder, still it might be good *inter partes,* and if so, and it was accompanied by an immediate delivery and followed by an actual and continued change of the possession of the property mortgaged, would be as effective notice to third parties whose rights had not attached as the actual filing of an instrument executed in due form.   *Farmers' & Merchants' Bank* v. *Orme,* 5 Ariz. 305, 52 Pac. 473. Evidence on this theory was presented to the court, but was considered immaterial.   When the mortgage instrument was excluded from the evidence on the objection of the L. W. Blinn Lumber Company as being defective in the proof of its execution, the possession of the mortgagee of the mortgaged property became an important matter for inquiry.   There are also objections to the sufficiency of the answer of the defendant the L. W. Blinn Lumber Company, to tender an issue,

but such objections, if tenable, in view of a retrial of the case, may not occur again.

We have taken great pains to decipher the record, and doubts have arisen as to the proper disposition of the appeal, but we conclude that substantial justice requires a reversal of the case, and it is remanded to the superior court of Greenlee county, with instructions to grant a new trial. It is so ordered.

ROSS, J., concurs.

CUNNINGHAM, J.—I concur in the result reached in this case by my associates, but cannot concur in that portion of the reasoning used by them in arriving at the conclusion holding that the trial court, in the absence of preliminary proof of authority from the corporation to its officers or agents to execute the mortgage in question, the mortgage not bearing the corporate seal, was right in excluding the mortgage from consideration. The lessor is not a party, and the lessee corporation defendant does not contest the case.

The appellee L. W. Blinn Lumber Company in its answer denies the execution of the mortgage because of the absence of knowledge or information on the subject, which, of course, raises no issue. It then further answering: "Denies that its interest is inferior or subject to the lien of plaintiff's said mortgage, or to any lien or interest of the plaintiff in or to the lots mentioned and described in the complaint; that the L. W. Blinn Lumber Company is the owner in fee of all the property mentioned and described in plaintiff's complaint. . . ." This answer admits the mortgage and attempts to avoid its effect. The defendant thus and thereby assumed the burden of proof to establish its superior right and claim, and on this theory the proof of the execution of the mortgage as between the mortgagee and lumber company was immaterial, the existence of the mortgagee having been admitted in the answer. If the defense should have been established, the mortgage was of no avail as against the lumber company; should the lumber company fail to establish its superior title in fee, as alleged, then it had no concern in the mortgage lien. The mortgage was admitted as against all the other defendants except the lumber company and should have been ad-

mitted against it. The lumber company offered no proof of its title or claim to the property in controversy, nor to the lots upon which the building is situate. The trial court should, upon that condition arising, have ordered a personal judgment against the Armory company and ordered a foreclosure of the mortgage lien as superior and prior to all claims of the defendants. I think, however, the defendant L. W. Blinn Lumber Company was misled by the ruling of the trial court into believing such ruling excluding the mortgage from consideration as to it relieved it of offering any testimony establishing its claim, and the trial court in its judgment took the same view of the law, which was error. The situation will justify us in reversing the judgment and remanding the cause to the superior court of Greenlee county, with instructions to that court to grant the plaintiff a new trial.

NOTE.—As to the rights of a mortgagee under a chattel mortgage as against a levying officer, see note in 96 Am. St. Rep. 689.

As to general statutory requisites for executing chattel mortgages, see note in 137 Am. St. Rep. 473.

As to the fixing of corporate seal in execution of instruments by corporation, see note in 50 Am. St. Rep. 150.

As to the tests for determining what are fixtures, see note in 105 Am. St. Rep. 646.