(July 3, 1918.)[1]

TYSON CREEK RAILROAD COMPANY, a Corporation, Respondent, v. EMPIRE MILL COMPANY, a Corporation, and WILLIAM CONNOLLY, Appellants.

[174 Pac. 1004.]

EMINENT DOMAIN—EVIDENCE — EXPERT TESTIMONY—TRIAL — INSTRUCTIONS—VIEW BY THE JURY—VALUE—DAMAGES—BENEFITS.

1. In an action for the condemnation of lands by a railroad company, it is not error to exclude from the evidence a permit to divert and appropriate waters for mining purposes upon the lands in question, issued by the state engineer to one not a party to the action, upon an application filed therefor after the issuance of the summons.

2. It is not error to allow an expert witness to testify as to the facts and assumptions upon which he arrived at his opinion, which is admitted in evidence, where such assumptions are based upon his own investigation.

3. The market value of the property actually taken in a condemnation proceeding is the correct rule of ascertaining damage for the property taken in all cases where it is of such a nature that its market value can be determined.

[As to evidence of damages in condemnation proceedings, see note in 22 Am. St. 49.]

4. Even though an isolated instruction, considered alone, may be erroneous and misleading, where the instructions as a whole state the law correctly, no reversible error is committed.

5. Evidence of the discovery of mineral deposits upon lands sought to be condemned for railroad right of way after the issuance

of summons is admissible for the purpose of enabling the jury to determine whether the market value of the land was affected thereby at the time of the issuance of the summons. In such cases it is not permissible to draw a distinction between actual value and market value, for actual value must be held to mean actual market value.

6. Under Rev. Codes, sec. 5220, benefits which will specially and directly accrue to the portion of the land not sought to be condemned may be set off against the damages which will accrue to the portion not sought to be condemned, but not against the value of the portion of the land taken. Under this statute, increased transportation facilities are not special and direct benefits to the land not taken.

7. Benefits which may be set off against lands not sought to be condemned must be such as relate to the land and not to the owner.

8. The knowledge gained by the jury by means of a view of the premises involved does not supply a want of evidence and is not evidence upon which a verdict may be based, but it is to be applied in determining the weight and applicability of the evidence introduced at the trial.

APPEAL from the District Court of the Eighth Judicial District, for Benewah County.   Hon. John M. Flynn, Judge.

Action to condemn right of way.   Judgment for the plaintiff.  *Reversed.*

C. W. Beale and Chas. L. Heitman, for Appellants.

A water right owned by defendants and appurtenant to the land would add to the value of the land owned by and in the possession of appellants, and their damages would thereby be increased.  (2 Lewis on Eminent Domain, sec. 480.)

Mere general and public benefits, or such benefits as result from the improvement to the public at large, cannot be charged to the owner of land which is taken for a public use.   (10 Am. & Eng. Ency. of Law, 1177, citing cases.)

The jury should have been instructed that if they found from the evidence that appellants' lands had been specially and directly benefited, they should so find, and the difference between special and general benefits should have been clearly

defined. (3 Brickwood-Sackett Instructions, sec. 3562; *Beveridge v. Lewis*, 137 Cal. 619, 92 Am. St. 188, 67 Pac. 1040, 70 Pac. 1083, 59 L. R. A. 581; *Hilbourne v. Suffolk County*, 120 Mass. 393, 21 Am. Rep. 522; *St. Louis etc. R. R. Co. v. Continental Brick Co.*, 198 Mo. 698, 96 S. W. 1011; *Chicago etc. Ry. Co. v. Wiebe*, 25 Neb. 542, 41 N. W. 297; *Guthrie etc. Ry. Co. v. Faulkner*, 12 Okl. 532, 73 Pac. 290; *Laflin v. Chicago etc. Ry. Co.*, 33 Fed. 415; *Adden v. White Mountain R. R. Co.*, 55 N. H. 413, 20 Am. Rep. 220.)

The benefits to be considered were those to the land. (*Bennett v. Woody*, 137 Mo. 377, 38 S. W. 972.)

A view of the premises by the jury is not evidence. (2 Lewis on Eminent Domain, sec. 425, p. 937; *Cram v. City of Chicago*, 94 Ill. App. 199; *Vane v. City of Evanston*, 150 Ill. 616, 37 N. E. 901; *Rich v. City of Chicago*, 187 Ill. 396, 58 N. E. 306.)

W. F. McNaughton, for Respondent.

The court's instruction No. 2 is in direct accordance with the provision of sec. 5220, Rev. Codes, regarding the measure of damages and compensation, and in accordance with the opinion of the court as to the measure of damages in the case of *Idaho Western Ry. Co. v. Columbia Conference etc.*, 20 Ida. 568, 119 Pac. 60, 38 L. R. A., N. S., 497.

The fourth and fifth instructions are in direct accordance with the law of this state as announced in the *Rawson-Works Lumber Co. v. Richardson*, 26 Ida. 37, 46, 141 Pac. 74.

The jury should consider any special benefit to the timber and these timber lands which they find resulting from this road running directly through them. An instruction to disregard any benefits that might accrue to these lands specially or otherwise by virtue of transportation afforded would clearly have been erroneous under our code provisions and the testimony in this case. (*Colorado Cent. R. Co. v. Humphrey*, 16 Colo. 34, 26 Pac. 165; *St. Louis, O. H. & C. Ry. Co. v. Fowler*, 142 Mo. 670, 44 S. W. 771; *Chicago, S. F. & C. Ry. Co. v. McGrew*, 104 Mo. 282, 15 S. W. 931.)

RICE, J.—The Tyson Creek Railroad Company instituted this proceeding against the Empire Mill Company, a corporation, and William Connolly, for the purpose of condemning certain portions of their property for right of way for a railroad, and to determine the value of the land sought to be taken, as well as damages and benefits to that portion of the property not taken. The two cases were consolidated and tried as one to a jury. The jury by its verdict found the value of each tract of land sought to be taken for the right of way, and also damages accruing to that portion of the land of each of the defendants not sought to be condemned, as well as the amount which the land not sought to be condemned will be specially and directly benefited by the construction of the proposed railroad.

The first assignment of error is that the court erred in sustaining the objection of respondent to the introduction in evidence of Appellant's Exhibit "T." It appears that this exhibit was a permit issued by the state engineer to appropriate and divert waters for mining purposes upon the lands in question. It appears further that the permit was not issued to any party to the action, but was issued to Lawrence Connolly upon an application therefor filed with the state engineer on April 5, 1916. The summons in the Empire Mill Company's case was issued February 15, 1915, and the summons in the Connolly case was issued June 14, 1915.

Sec. 5221, Rev. Codes, provides as follows:

"For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the summons, and its actual value, at that date, shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed, as provided in the last section. No improvements put upon the property, subsequent to the date of the service of summons, shall be included in the assessment of compensation or damages."

The issuance of this permit by the state engineer could not have had any bearing upon any feature of this case, and it was not error to exclude the exhibit.

The action of the court in overruling motion of appellant to strike out the following testimony of witness Burbridge is assigned as error:

"A.   Assuming that this hole would be the same as the others which we did examine and could reach the bottom of and then if this gold had all been found in the six inches of gravel next to the bedrock as shown in the other pits, and Pit No. 3 is fourteen feet deep, then these values that we arrived at by computing this amount of gold by the number of pans usually estimated to the yard, we should have a value of about two cents per cubic yard."

The witness was an expert and outlined in his answer the results of his own observations by which he arrived at his conclusions.   In this connection appellants cite *Alameda Mining Co. v. Success Mining Co.*, 29 Ida. 618, 161 Pac. 862, but the discussion in that case was directed to the weight of the evidence and not to its admissibility.

The following instruction is assigned as error:

"You are further instructed that the presence of placer gold upon this land of itself would not warrant you in allowing damages therefor, but such gold must exist in such quantities and be in such condition as to be capably and feasibly mined so that it could and would increase the market value of that property at the time of the commencement of this action; but regardless of whether there is gold in this property, the whole question is to be finally determined by you upon the one question as to the market value of this land at the time of the commencement of this action."

It is claimed that this instruction is faulty in that it does not discriminate between the market value of the tract actually sought to be appropriated and the damages to the remainder of the land not taken.   In other portions of the charge the court instructed the jury that in arriving at its determination of value it should consider the market value of the land in the condition in which it was at the time of the issuance of summons.   The court also instructed the jury that the railroad company could only acquire an easement in the land sought to be condemned for its right of way, and

that the ownership of the fee would remain in appellants; also that any mineral deposits contained in the right of way condemned by respondent would remain the property of appellants, and that they would have the right to mine the same if they could do so without interfering with the right of the respondent to operate its railroad on and along the right of way. The court further instructed the jury that in reaching a conclusion as to how much the several tracts of land not condemned would be depreciated in value by reason of the condemnation, it was to consider, among other elements enumerated, the inability or inconvenience to the appellants, or either of them, to use said land for placer mining purposes.

When all the instructions are considered together they appear not to be obnoxious to the objection stated. Even though the instruction complained of, taken alone, might be erroneous and misleading, where the charge as a whole states the law correctly, no reversible error is committed. (*Kelly v. Lemhi Irrigation & Orchard Co.*, 30 Ida. 778, 168 Pac. 1076; *Cnkovch v. Success Mining Co.*, 30 Ida. 623, 166 Pac. 567. See, also, the case of *Southern Pac. Ry. Co. v. San Francisco Savings Union*, 146 Cal. 290, 106 Am. St. 36, 2 Ann. Cas. 962, 79 Pac. 961, 70 L. R. A. 221.)

The portion of the charge to the effect that appellants have the right to mine the ground condemned if they can do so without interfering with respondent's right to operate its railroad on and along the right of way is too narrow. There are many other uses to which a railroad company may put its right of way besides operating its railroad thereon, and the court should have instructed the jury that in their mining operations upon the land taken appellants would have no right to interfere with any of these uses.

In this connection appellants also complain of the instruction of the court given in the following language:

"In arriving at such value you should consider the market value of the land in the condition in which it then was, and you should not consider any increased value by reason of any alleged discoveries of mineral or exploration of land for placer mining purposes after the date of the issuance of

the summons. The only purpose for which evidence of the mineral deposits under the surface of the ground was admitted was that you might consider the same in determining whether the market value of the land was affected thereby. If the market value of such land was not affected by the presence of such mineral deposits at the date of the issuance of the summons, then the evidence of mineral deposits could not be considered by you in fixing the damages to the land.''

Our attention is called to the case of *City of Los Angeles v. Pomeroy,* 124 Cal. 597, 57 Pac. 585. In his opinion in that case, Chief Justice Beatty said:

''In other words, to use the illustration put by appellants, if a gold mine worth millions of dollars had been discovered in this land the day after the issuance of summons, the city could take the land by paying its value for agricultural purposes. . . . . The thing to be ascertained is not market value, but actual value, and the only reason why market value is taken as the criterion of compensation in ordinary cases is because it is in such cases the true measure of actual value— the only practical test. But in a case where discoveries made after the issuance of summons demonstrate that the actual intrinsic value of the land at that date was greater than its market value—in other words, when it appears that market value is no criterion of actual value—those discoveries should be taken into consideration.''

Temple, J., in his opinion in that case said:

''The phrase 'actual value' is sometimes used in contradistinction to market value to indicate that property is valued too high to make it a good investment. If the market value of the land was one hundred dollars per acre, it would not be permissible to show that the real or actual value was less and that the market value was inflated. The owner could get the market value and less would not make him whole. The government can take private property for its uses at any time conditioned only that the public shall compensate the owner, that it shall pay what it is worth when taken. This value must be the market or exchange value, for there can be no other. Value, which determines the price at which the owner

must sell, must be the exchange or market value, and actual value means actual market value.''

The correct rule may be deduced from the foregoing discussions. Actual value is market value when the true conditions are fully disclosed. A prospect hole on a placer claim is not an improvement in the sense in which that word is used in Rev. Codes, sec. 5221. It adds nothing to the value of the land, but tends to show what its actual condition is. The gold, the presence of which was disclosed by prospecting after summons was served, was in the ground at and prior to that date. It was and is the property of appellants, and if it is in quantity and condition to be profitably mined, they were entitled to show that fact in order to obtain just compensation for any damage they may suffer by reason of interference by respondent in the use and enjoyment of their lands for mining purposes, although its actual condition was discovered after summons was served upon them. In this view of the law that portion of the instruction last above quoted which charges that the jury should not consider any increased value by reason of any alleged discoveries of mineral or exploration of land for placer mining purposes after the date of issuance of the summons is misleading and erroneous. See the cases of *Rawson-Works Lmbr. Co. v. Richardson,* 26 Ida. 37, 141 Pac. 74, and *Portneuf-Marsh Valley Irr. Co. v. Portneuf Irrigating Co.,* 19 Ida. 483, 114 Pac. 19.

It is true that there may be occasions when property, because of the peculiar use to which it is put, cannot be said to have a market value, but in such cases the court makes use of such means as are available to determine what shall be a just compensation to the owner for the property taken. (*Idaho Western Ry. Co. v. Columbia Conference etc. Synod,* 20 Ida. 568, 119 Pac. 60, 38 L. R. A., N. S., 497.)

Instruction No. 14, given by the court, is as follows:

''You are instructed that the plaintiff in this case in operating the railroad for which the right of way is sought to be condemned will be acting as a public carrier and under the laws of this state will be required to carry all logs for all persons at the same rate, and that under the laws of this state

it will be required to establish and maintain a reasonable rate for the transportation of freight upon said road, and in arriving at your verdict you should consider the plaintiff as a public carrier of freight for hire, and that the defendants will have the same right to use the railroad upon the same terms as any and all persons and corporations whomsoever.

"In this case some evidence has been introduced as to the established rate upon said road for hauling logs, and you may consider this in connection with other testimony upon the question of whether or not it will enhance or depreciate the value of defendants' property.

"Benefits, however, which will accrue to defendants in common with all other persons in the vicinity cannot be considered by you as any enhancement of the value of defendants' property."

The giving of this instruction was erroneous.

It appears that the lands of appellants are heavily timbered. The benefits sought to be offset in this case against the damages to the land not taken were such as grow out of the increased transportation facilities afforded for the removal of logs from the land.

By Rev. Codes, sec. 5220, benefits which will specially and directly accrue to the portion of the land not sought to be condemned may be set off against the damages which will accrue to the portion not sought to be condemned, but not against the value of the portion of the land taken. The benefits referred to must be special and direct. This rule is enjoined by the statute, and eliminates from consideration a great many of the cases which might be cited to this court, and prevents some of the cases cited by respondent from being considered as applicable to this case.

By the instruction quoted the attention of the jury is not directed to any benefit which is specially and directly applicable to the lands of appellants as distinguished from the lands of other owners in the vicinity. The question is not whether the value of the remaining property of appellants will be enhanced by the construction of the improvement, but whether it will be benefited specially and directly. If the

value of the lands in the community is enhanced generally by the construction of the improvement, such enhanced value cannot be offset against damages which appellants may have suffered thereby. As suggested in the case of *Mantorville R. & T. Co. v. Slingerland,* 101 Minn. 488, 118 Am. St. 647, 112 N. W. 1033, 11 L. R. A., N. S., 277, appellants are not required to pay in part for the same thing which their neighbors receive gratis.

Under our statute, increased transportation facilities cannot be considered special and direct benefits to the land not taken. (2 Nichols on Eminent Domain, 2d ed., p. 770.) Especially is this true where special facilities, such as side-tracks, switches and spurs, cannot be claimed for the land as a matter of right.

The instruction is not cured by the last paragraph thereof, for the reason that taken as a whole it refers only to general benefits as distinguished from special and direct benefits. Moreover, the benefits must relate to the land and not to the owner. (*Bennett v. Woody,* 137 Mo. 377, 38 S. W. 972; *Hamilton v. Pittsburg etc. R. Co.,* 190 Pa. St. 51, 42 Atl. 369, 51 L. R. A. 319.)

The introduction of evidence as to an established rate for logs upon said road was wholly irrelevant and immaterial. There is no contention that this rate as established is binding upon the respondent for any period of time, and it is subject to change at any time. In any event, the rate would be available to all persons alike, and could not be a matter of special and direct benefit to the lands of appellants. (*Mantorville R. & T. Co. v. Slingerland, supra; Adden v. White Mountain R. Co.,* 55 N. H. 413, 20 Am. Rep. 220; *Beveridge v. Lewis,* 137 Cal. 619, 92 Am. St. 188, 67 Pac. 1040, 70 Pac. 1083, 59 L. R. A. 581.) As to the impropriety of proving an established rate, see *Reading & Pottsville R. Co. v. Balthaser,* 119 Pa. St. 472, 13 Atl. 294.

The insufficiency of the evidence to support the verdict of benefits to each of the two appellants is also specified as error. As we have pointed out, the only benefits which can be con-

sidered by the jury are such as are special and direct.   So far as we have been able to discover from the record, no evidence was introduced at the trial of any special or direct benefits to the lands of appellants which were not shared in common by other lands in the vicinity of the railroad.

The giving of Instruction No. 20 is assigned as error.   This instruction is as follows:

"The jury are instructed that in this case you have been allowed a view of the premises and ground sought to be condemned, and the adjoining ground, and in arriving at your verdict you should apply the knowledge which you have acquired by this view of the premises, to the evidence in this case and bring to bear upon the questions your good judgment, and from all facts and circumstances in this case and your view of the premises you should arrive at the amount of damage which the defendants are entitled to."

The objection to this instruction is that it permits the jury to consider as evidence the knowledge obtained from a view of the premises.   The first part of the instruction is not objectionable, but from the latter part the jury might infer that it could arrive at its verdict based upon knowledge gained by its view of the premises.   It is very doubtful whether the jurors were misled by this instruction, but we think they should have been instructed to the effect that they could only use the knowledge obtained by their view of the premises in determining the weight and applicability of the evidence introduced at the trial, and that a view of the premises does not supply a want of evidence and is not of itself evidence upon which a verdict may be based.

We have considered the alleged error that the evidence is insufficient to support the verdict as to the amount of damages awarded, but are of the opinion that so far as the value of the land is concerned, and especially with reference to the value of the mineral deposits contained in the land, there appears in the record to be such a substantial conflict of the evidence that this court would not be justified in disturbing the verdict of the jury for that reason.

Discussion of the other errors assigned we consider unnecessary.

The judgment is reversed, with costs to appellants.

Morgan, J., concurs.

Budge, C. J., sat at the hearing but took no part in the opinion.

Petition for rehearing denied.