407 P.2d 135

Stanley LOBDELL and Irene Lobdell, husband and wife, Plaintiffs-Appellants,

v.

STATE of Idaho, on relation of the State BOARD OF HIGHWAY DIRECTORS, Roscoe C. Rich, Leonard K. Floan and Wallace C. Burns, Defendant-Respondent.

No. 9252.

Supreme Court of Idaho.

Oct. 29, 1965.

Stephen Bistline, Sandpoint, Thomas A. Mitchell, Coeur d'Alene, for appellants.

Faber F. Tway, Chief Legal Counsel, Dept. of Highways, and Anton Hohler and Jack C. Riddlemoser, Boise, for respondent.

McFADDEN, Justice.

Mr. and Mrs. Lobdell, appellants herein, instituted this action in inverse condemnation, the basic facts of which are without dispute. They owned a certain tract of land situate in Newport (Oldtown), Bonner County, Idaho. Newport is adjacent to the boundary between Idaho and Washington, and the town of Newport, Washington. Appellants operated and maintained a business consisting of a service station, restaurant, bar and taxi service on the property involved. This property lies to the west of the Pend Oreille River, on U. S. Highway No. 2, with 300 feet of frontage. This highway runs from Spokane, Washington, through both towns of Newport, on to Sandpoint,

Idaho, and provides access northerly to Canada, and easterly to Montana.

In the early summer of 1957, respondent commenced making certain improvements on Highway No. 2, consisting of grading, draining, and surfacing of a portion of the highway easterly from the state border to the bridge over the Pend Oreille River. Construction of concrete sidewalks, curbing and gutters was also involved in the project.

Prior to this construction program appellants had an unrestricted access to the whole of their property abutting on Highway No. 2. After commencement of the construction work, appellants instituted an action to enjoin construction of a barrier curb in front of their property, but prior to hearing of their application for a temporary injunction, the curbing was installed. No issue is presented by this appeal as to the application for the preliminary injunction.

The barrier curbing, as constructed extended along the whole of appellants' property, with a concrete driveway, providing a forty foot access from the highway onto their property. West of the end of their property another forty-foot driveway was installed, with only three feet on their property, and the balance on adjoining property.

The curbing was constructed such that traffic from the highway could not enter upon appellant's land except from the driveways. The State did not initiate any condemnation proceedings prior to this construction program. Appellants sought to have the State provide other access, but without success, and the present action was instituted.

An amended complaint was filed in November, 1961, to which respondent filed its answer on June 4, 1962. Trial commenced June 14, 1962, on the issues framed by the pleadings. Appellants in their amended complaint alleged that the State by construction of the project greatly impaired and destroyed access to their property and that it was no longer usable as a truck stop, all to their damage in the amount of $37,500.00, with interest from August 1, 1957. The State denied any damages being caused by the construction, and in effect alleged that adequate access to appellants' property had been provided, and that any restriction of access to the property to the west was not imputable to the State.

This cause was tried by the court sitting without a jury. Some preliminary items were disposed of by the court and counsel on the day prior to the trial, but nothing appears of record as to what took place.

At the outset of the hearing before the court, the issues, as summarized by the trial court, only involved the measure of damages the appellants suffered by reason of

being shut off from the old access, and no issue was raised that the curbing with only 43 feet of access did not constitute a taking of appellants' property.

The evidence reflects that appellants gave an option agreement to an oil company to purchase the land without improvements for $23,500.00; that prior to the trial a rather large building that formerly housed the restaurant, bar and taxi business had been removed from the premises. During the course of the trial, one of the state's counsel stated:

"I wish to make it clear we are going to restore it [further access to appellant's property]. That is what we are going to do. It's not a permanent deprivation, it's a five year deprivation, and you can't use total values."

In the findings of fact, the court stated:

"6. At the trial of this action the defendant stipulated that the erection of the curb in 1957, as aforesaid, constituted a taking, within the meaning of the law of condemnation, and that the plaintiffs were entitled to damages therefor."

The court further found:

"10. At the trial the defendant stated that it was going to restore the access in a manner complete [sic] satisfactory to the land-owners, but it had not done

so, and it had also promised to do this in November, of 1961."

"11. After the cause was submitted the Court visited the property, and saw that the approaches had been changed, and the Court finds that the access has been restored, and feels that the way the access is now that there is plenty of room for ingress and egress and that by the placing of proper signs it will be more orderly for the trucks to enter than it was before, and the through traffic on the highway will be safer by having two approaches than it was before. The court finds that the defendants are entitled to an off-set of $9,000.00 for having restored the access to its present status."

Appellants appealed from the judgment entered, setting out twelve assignments of error, which can be grouped into three major contentions by appellants, as follows:

1. That the trial court erred in assessing damages based upon a five year temporary taking rather than upon a permanent taking.

2. That the trial court erred in assessing damages based upon insufficient evidence.

3. That the trial court erred in making an extrajudicial view of the property after the cause had been submitted for consideration and on the basis of this view erred in granting offset to the respondents for restoration of access.

**564**

The authorities are almost universally in agreement that the measure of damages for the destruction or impairment of a right of access to a highway upon which the property of an owner abuts is the difference between the fair market value of the property immediately before the taking, and fair market value of the same property immediately after the destruction or impairment of the access. The basis of the damages awarded is not the value of the right of access to the highway, but rather the difference in the value of the property before and after the destruction or impairment of the access, and this in turn is based upon the highest and best use to which the land involved is suitable before and after the taking. Mabe v. State, 83 Idaho 222, 360 P.2d 799; State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960); 29A C.J.S. Eminent Domain § 141, p. 597; 18 Am.Jur. 919, Eminent Domain § 280; 4 Nichols on Eminent Domain, 588, § 14.2431; Condemnation Appraisal Practice, p. 201.

It is important to note in this respect the time at which the valuation of the property is to be made. This court has stated the rule in Mabe v. State, supra, as follows:

"Any such damages, however, must be limited to those directly attributable to loss of value of appellants' premises occasioned by the impairment of their right of access as of the time of such impairment, * * *." 83 Idaho at 229, 360 P.2d at 802.

Witnesses for the appellants stated their opinion of the value of the property before the taking and immediately after the taking. Each of these witnesses had been qualified as experts in the area of appraisement. The results of their testimony is summarized as follows:

Mr. Weiber testified in his opinion, that the value before the taking was $60,000 to $65,000, and the value after the taking was $25,000. Mr. McInnis testified that in his opinion the value before the taking was $65,000 and the after value was $30,000. Mr. Lee's opinion was that the value before the taking was $62,000, and after the taking $32,000. Appellant Lobdell, gave the value before the taking as $70,000, and after, at $20,000. None of the appellants' witnesses in stating their opinion as to valuations of the property after the taking, considered the statement during the course of the trial that the State was going to restore the access.

The State presented two witnesses as experts to testify as to their opinion of the valuation of appellants' property before and after the taking. Mr. Acuff stated that in his opinion the value of the property before the taking was $57,500, and the value after the taking was $54,000. Mr. Acuff considered the restoration of the access in fixing the after-taking valua-

tion at $54,000. However, upon cross-examination he gave his opinion as to the after-taking valuation, without consideration of restoration of access, to be $48,000. Mr. Acuff, in giving his opinion as to the damages suffered by the appellants by reason of the taking over a five year period, fixed the damages at $9,500, which figure was based on the estimated loss of income over the period of five years.

Mr. Kerby, the other of the State's witnesses testified that in his opinion the value of the property before the taking was $57,580, and the value after the taking was $53,200, considering restoration of access was to be made. He explained that the after-taking valuation was computed on the basis of annual rental loss for a five year period. He also testified upon examination by the court that if the taking was considered as a permanent taking that in his opinion the value after the taking would be $45,923.

The record discloses that at all times the appellants considered the construction of the barrier curb constituted a taking of a permanent nature. Even up to the time of filing of the answer by the State there was no indication in the record that the State at any time considered that there was a taking of any kind, either permanent or temporary. Only during the course of trial, or immediately before the trial did the State concur that the erection of the barrier constituted a taking of access rights, and only during the course of the trial did the State interpose the theory that the taking was only of a temporary nature. The pleadings do not disclose such contention, and there is no testimony disclosing that the State was going to allow any further or greater access to the property. It was only by way of the attorney's representation, and by the court's inspection of the premises in question after trial that this element was interjected.

Nothing in the record indicates that at the time of the construction of the barrier-curb, the State had any intention of re-opening additional access. Had this cause been tried as a regular condemnation action wherein the State claimed the right to take the access rights, the damages would have been assessed as of that time if the taking was less than permanent. In such event the owners could have demanded a disclosure as to the length of time the access was to be impaired, so that any taking could be limited in time by the decree and damages fixed accordingly.

Herein, the State some five years after the admitted taking occurred, now claims that the taking was a temporary and not a permanent one. This situation is comparable to those cases involving condemnation actions where executory promises are

made by a condemnor at the time of taking of the property of what the condemnor will do in the future, such statements being made for the purpose of reduction or mitigation of damages. In such situations, the courts have quite generally held that unaccepted promises or promissory statements or stipulations as to what the condemnor intends to do cannot be accepted to effect either the condemnor's acquired rights or the amount of the damages to be assessed. Annot.: 7 A.L.R.2d 364.

This instant case is also comparable to a line of cases where a condemnor has acquired certain rights against a property owner, has paid the compensation, and thereafter upon abandoning the rights so acquired, or failing to use them, brings suit against the property owner for recovery of the sums paid. Under such situations, the cases generally hold that the condemnor has no right to recover the funds paid to the property owner. Town of Hampton v. Coffin, 4 New Hampshire, 1st Series 517 (1829); Stiles v. Town of Middlesex, 8 Vermont 436 (1836); Harrington v. Berkshire County Com., 22 Pickering 263, 35 Am.Dec. 741 (Mass. 1839); Hastings v. Burlington & M. R. R. Co., 38 Iowa 316 (1874); Miller v. Cincinnati, L. & A. Electric St. R. Co., 43 Ind.App. 540, 88 N.E. 102 (1909); Vandewater v. Chicago etc. R. Co., 170 Iowa 687, 153 N.W. 190, 1917 C Ann.Cas. 1132 (1915); State v. Pollitt, 220 Ind. 593, 45 N.E.2d 480 (1942); 18 Am.Jur. 748, Eminent Domain § 125.

The effect of the trial court's determination that the state was entitled to a $9,000 off-set against the damages awarded is to require repayment of damages upon the state's relinquishment of the right of access previously taken. Had the state initially intended this taking to be for only a temporary period of time, and had it fully advised appellants of such intent, and had appellants then acquiesced in such proposal, the situation would be entirely different. From the time of installation of the barrier-curb, appellants were in the dark as to the state's intent. They initially attempted to secure a restraining order against such installation, but without success. It is too late now for the State to claim this to have been only a temporary taking. Under the code provisions of this state in an ordinary condemnation action, the condemnor is not entitled to possession of the premises until such time as a deposit in the amount fixed by appointed commissioners has been paid into court. I.C. § 7-717. Pacific Northwest Pipeline Corp. v. Waller, 80 Idaho 105, 326 P.2d 388. Also I.C. § 7-712 provides that the time for assessment of damages in an ordinary condemnation action is to be determined as of the date of the summons. In the instant action, of course, no summons was served upon appellants, but their damages

must be ascertained as of the date of the taking of possession, stipulated by the parties to have been July 1, 1957. When the record fails to show that the State at the time it took the appellant's access rights was taking it for a term less than permanent, any offset against the damages assessed would be improper.

■ The trial court was in error in allowing any offset against the damages awarded.

■ The record discloses competent evidence to sustain the court's finding that the value of the appellants' property, prior to the taking, was $60,000. The appellants' three witnesses, in addition to the testimony of appellant Lobdell established the before value at between $60,000 and $70,000. The State's witness established the valuation before the taking at not less than $57,500. The $60,000 figure found by the trial court, to be the value before the taking, was certainly within the estimates given by all the witnesses. The valuation of the property after the taking as found by the trial court was $45,000. This finding is sustained by the testimony of the State's witness Kerby, who advised the court that in his estimation the after value was $45,923, without consideration of the restoration of the access. The findings of the trial court in this regard are sustained by the record.

■ Although it is generally recognized that on a trial of a cause by the court sitting without a jury, the court has discretionary power to inspect the premises during the course of the trial in order to evaluate and apply the evidence submitted. The trial court was in error in making the personal examination of the premises after the case was submitted for his decision, and then entering findings based on the result of this examination, when such inspection was made without notice to the parties. In Tyson Creek R. R. Co. v. Empire Mill Co., 31 Idaho 580, 174 P. 1004, this court in dealing with an instruction given the jury as to the weight to be given evidence after a view of the premises, stated:

"The objection to this instruction is that it permits the jury to consider as evidence the knowledge obtained from a view of the premises. The first part of the instruction is not objectionable, but from the latter part the jury might infer that it could arrive at its verdict, based upon knowledge gained by its view of the premises. It is very doubtful whether the jurors were misled by this instruction; but we think they should have been instructed to the effect *that they could only use the knowledge obtained by their view of the premises in determining the weight and applicability of the evidence in-*

*troduced at the trial, and that a view of the premises does not supply a want of evidence, and is not of itself evidence upon which a verdict may be based."* (Emphasis added). 31 Idaho at 590, 174 P. at 1007.

In Uhrig v. Coffin, 72 Idaho 271, 240 P.2d 480, the rule stated in Tyson Creek R. R. Co. v. Empire Mill Co., supra, was applied to a trial judge; therein it is stated:

> "The learned trial Judge viewed and carefully inspected the premises and while such is not a substitute for nor may be considered as evidence, Tyson Creek R. R. Co. v. Empire Mill Co., 31 Idaho 580, 174 P. 1004, such viewing and inspection are to be considered in determining the weight and applicability of the evidence. Department of Finance v. Union Pac. R. R. Co., 61 Idaho 484, 104 P.2d 1110." 72 Idaho at 274, 240 P.2d at 481.

At 89 C.J.S. Trial § 588, pp. 369–370 the rule is stated:

> "A view or inspection of the character under consideration is permissible for the purpose of enabling the court properly to understand the evidence, and properly to apply it. A view may be considered as bearing on the credibility of the witnesses who appeared at the trial. It cannot be considered as evidence or have the effect of supplying evidence independent of, or in addition

to, that taken in the course of the trial, or supplant evidence adduced, or meet the requirement that proof of necessary facts be made."

See also 53 Am.Jur. 784, Trial § 1128; First Nat. Bank v. Clifton Armory Co., 14 Ariz. 360, 128 P. 810 (1912); Annot.: 97 A.L.R. 335.

The judgment and decree of the trial court allowing an offset against the damages found is reversed, and the cause remanded with directions to modify and enter judgment eliminating the offset.

Costs to appellants.

McQUADE, C. J., and TAYLOR, SMITH and KNUDSON, JJ., concur.